1
2
3                    UNITED STATES DISTRICT COURT
4                         DISTRICT OF NEVADA
5                                 * * *
6   SIERRA TRAIL DOGS MOTORCYCLE              Case No. 3:18-cv-00594-MMD-CLB
    AND RECREATION CLUB, *et al.*,
7                                                          ORDER
                                Plaintiffs,
8        v.
9   U.S. FOREST SERVICE, *et al.*,
10                              Defendants.

11  **I.    SUMMARY**

12        Plaintiffs[1] challenge the U.S. Forest Service's decision to modify the standard

13  governing off-highway vehicles ("OHVs") in the Humboldt-Toiyabe National Forest—one

14  of many provisions adopted to protect the sage-grouse from extinction—as a "significant"

15  change requiring supplementation of environmental review within the framework of the

16  National Environmental Policy Act, 42 U.S.C. § 4331, *et seq.* ("NEPA"). Before the Court

17  are three cross motions for summary judgment: (1) Plaintiffs' motion for summary

18  judgment (ECF No. 31); (2) Defendants'[2] cross motion for summary judgment (ECF No.

19  37); and (3) Intervenor-Defendants'[3] cross motion for summary judgment (ECF No. 40).[4]

20  Because the Court finds that Federal Defendants were not required to prepare a

21  _____

22        [1]Plaintiffs are Sierra Trail Dogs Motorcycle and Recreation Club ("Sierra Trail
    Dogs"), Pine Nut Mountains Trails Association, American Motorcyclist Association District
23  36, California Four Wheel Drive Association, and The Blue Ribbon Coalition.

24        [2]Defendants are the United States Forest Service, Humboldt-Toiyabe National
    Forest, and William ("Bill") Dunkelberger, the Forest Supervisor of Humboldt-Toiyabe
25  National Forest (collectively, "Federal Defendants").

26        [3]Intervenor-Defendants are American Bird Conservancy, Center for Biological
    Diversity, Western Watersheds Project, and WildEarth Guardians. The Court permitted
27  them to intervene as of right. (ECF No. 34.)

28        [4]The Court has reviewed the parties' response and replies. (ECF Nos. 39, 41, 44,
    45, 46.)

supplemental environmental impact statement ("SEIS") before issuing the final record of decision ("ROD") containing restrictions on OHV events Plaintiffs challenge here—and as further explained below—the Court will deny Plaintiffs' motion, grant Federal Defendants and Intervenor-Defendants' cross motions, and direct the entry of judgment in Federal Defendants' and Intervenor-Defendants' favor.

## II.    BACKGROUND

The following facts are undisputed and primarily derived from the administrative record ("AR"). Plaintiff Sierra Trail Dogs hosts an event every year called the Mystery 250. (ECF No. 1 at 11.) The Mystery 250 is a group trail ride or 'enduro,' where participants spend two days riding their motorcycles through the desert on an annually-changing route created by Sierra Trail Dogs. Historically, the Mystery 250 was held in mid-June. (*Id.* at 12.) However, because of the ROD, Sierra Trail Dogs had to move the Mystery 250 to mid-July, and are now more limited in terms of the routes it can choose for the event. (*Id.*) "To address the associated adverse impacts to Plaintiffs' recreational and aesthetic, procedural, and environmental interests caused by the [ROD], Plaintiffs filed this action." (ECF No. 31 at 13.)

The ROD is the product of a years-long administrative process to amend the forest management plan ("the Forest Plan") for the Humboldt-Toiyabe National Forest to protect the greater sage-grouse bi-state distinct population segment (Centrocercus urophasianus). (*Id.* at 7, 7-13; AR 36031.)  Sage-grouse rely on sagebrush for survival, and use different aspects of sagebrush habitats for different purposes. *See Oregon Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 565-66 (9th Cir. 2016). "For instance, at leks, 'open areas surrounded by sagebrush,' male sage grouse strut and compete for female mates, displaying their elaborate plumage." *Id.* at 566 (citation omitted). The Forest Plan has many components, but Plaintiffs only challenge the restrictions the Plan imposes on organized OHV events like the Mystery 250 (the "OHV Standard"). (ECF Nos. 1, 40 at 8.) The Court will therefore only provide a brief summary of the Forest Plan preparation process applicable to the OHV Standard here.

On November 30, 2012, Federal Defendants[5] published notice of their intent to prepare an environmental impact statement and elicit public comment on an amended forest management plan for the Humboldt-Toiyabe National Forest to better protect the bi-state sage-grouse. (ECF No. 31 at 9; AR 2036-2038.) On August 23, 2013, Federal Defendants released a draft environmental impact statement ("DEIS"). (ECF No. 31 at 10; AR 22659.) The DEIS presented two alternatives pertinent to the OHV Standard: the 'no action' alternative, which would not place any additional restrictions on OHV events, and the 'proposed action,' which contemplated some restrictions on when and where OHV events could take place. (ECF No. 31 at 10; AR 22684-22685.) The public was then allowed to comment on the DEIS. (ECF No. 31 at 10.)

In July 2014, Federal Defendants published a revised draft environmental impact statement ("RDEIS"), which presented three alternatives: the 'no action' alternative ("alternative A"); the 'proposed action,' which would place some restrictions on where and when OHV events could take place ("alternative B"); and the 'conservation alternative,' which would not allow any OHV events at any time ("alternative C"). (*Id.* at 11; AR 30285-30286.) The proposed alternative B specifically included the following OHV Standard: "[b]etween March 1 and May 15, off-highway vehicle events that pass within a 0.25 mile of an active lek shall only take place during daylight hours after 10 am." (ECF No. 31 at 11.) The public was then allowed to comment on the RDEIS. (*Id.*)

In February 2015, Federal Defendants simultaneously released their draft record of decision ("Draft ROD") and their final environmental impact statement ("FEIS"). (*Id.*) The OHV Standard included in the FEIS as the proposed action was more restrictive of OHV events than the OHV Standard included in the DEIS and RDEIS, providing, "[b]etween March 1 and May 15, off-highway vehicle events that pass within 3 miles of an active lek shall only take place during daylight hours after 10 a.m." (*Id.*) The FEIS was not subject to public comment. (*Id.* at 12.) However, the public could object to the Draft ROD. (*Id.*) While

---

[5]Really just the U.S. Forest Service, but the Court refers to all Federal Defendants collectively for ease of reference. (ECF No. 31 at 9-10.)

1   Plaintiffs did not submit any objections, Federal Defendants received seven objections.

2   (*Id.*) In an effort to resolve these objections, Federal Defendants proposed further

3   modifying the OHV Standard to read: "[b]etween March 1 and June 30, off highway vehicle

4   events that pass within 4 miles of an active or pending lek shall not be authorized." (*Id.* at

5   12-13.) Plaintiff the Blue Ribbon Commission attended a teleconference that included

6   discussion of this proposed modification of the OHV Standard, and then sent a letter

7   attempting to object to it. (*Id.* at 13.)

8       But Federal Defendants nonetheless proceeded with incorporating the OHV

9   Standard proposed in response to the objections to the Draft ROD in the Final ROD,

10  signed by Defendant Dunkelberger on May 16, 2016. (*Id.*; AR 36029-36091.) The OHV

11  Standard in the Final ROD provides: "[b]etween March 1 and June 30, off-highway vehicle

12  events that pass within 4 miles of an active or pending lek shall not be authorized. Critical

13  disturbance periods may shift 2 weeks back or forward in atypically dry or wet years based

14  on observations of breeding/nesting." (ECF No. 31 at 13.) As noted, the restrictions

15  contained in this OHV Standard caused Plaintiff Sierra Trail Dogs to move the Mystery

16  250 to mid-July. (*Id.*)

17      Plaintiffs created a helpful summary table to illustrate the changes Federal

18  Defendants made as the Forest Plan went through the procedural steps described above:

| | DEIS[6] | RDEIS[7] | FEIS[8] | RFEIS[9] | Final ROD[10] |
|---|---|---|---|---|---|
| Season | unspecified | 3/1-5/15 | 3/1-5/15 | 3/1-5/15 | 3/1-6/30 |
| Time | unspecified | before 10 am | before 10 am | before 10 am | all day |
| Lek Buffer | unspecified | 0.25 mile | 3 miles | 3 miles | 4 miles |
| Buffer Area | unspecified | 0.20 sq.mile | 28.27 sq.mile | 28.27 sq. mile | 50.27 sq.mile |

25  (ECF No. 44 at 12 (highlighting added, footnotes omitted).) Plaintiffs' challenge, in gist,

26  centers on the highlighted changes in the table above. Between the FEIS and the Final

27  ROD, Federal Defendants extended the season when OHV events are restricted by six

28  weeks, expanded the time restriction such that no OHV events may take place during that

4

season (instead of allowing them after 10 a.m.), and expanded the lek buffer radius from 3 to 4 miles (which, as Plaintiffs illustrate in the table, increases the buffer area around each lek). According to Plaintiffs, "[t]hese changes create significant hardships and adverse impacts of both practical and legal consequence, in large part because of the significantly drier and hotter conditions in July compared to June, resulting in health and safety risks, increased fire danger, and other potential resource impacts or complications." (ECF No. 1 at 15.)

Plaintiffs allege Federal Defendants violated NEPA because the magnitude of these changes required Federal Defendants to prepare a SEIS instead of moving directly to the Final ROD. (ECF No. 31 at 23-26; *see also* ECF No. 1 at 14.) In their Complaint, Plaintiffs also include three other claims: violation of the National Forest Management Act, 16 U.S.C. § 1600, *et seq.* ("NFMA") (*id.* at 2, 12-13); a claim involving special use permits that incorporates Plaintiffs' other claims for violations of NFMA and NEPA (*id.* at 15-16); and violation of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ("APA") (*id.* at 2, 16).

However, the parties all agree that this case rises or falls on the Court's resolution of the pending cross motions for summary judgment. (ECF Nos. 27 at 2, 31 at 7, 37 at 14 n.4, 40 at 30.) Thus, the Court's legal analysis farther below focuses on the parties' case-dispositive NEPA arguments raised in these motions.

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Where, as here, review of an agency action is sought not based upon a "specific authorization in the substantive statute, but only under the general review provisions of the APA," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), the Court does not determine whether there are disputed issues of material fact as it would in a typical summary judgment proceeding. Rather, the Court's review is based on the administrative record. *See Nw. Motorcycle Ass'n*, 18 F.3d at 1472 (9th Cir. 1994).

The APA limits the scope of judicial review of agency actions. A court may reverse an agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's decision may be reversed as arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "To make this finding, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).

In reviewing an agency's decision under this standard, "the reviewing court may not substitute its judgment for that of the agency." *Envtl. Def. Ctr., Inc. v. U.S. Envtl. Prot. Agency*, 344 F.3d 832, 858 n.36 (9th Cir. 2003). Rather, the function of the district court is only to determine whether as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769-70 (9th Cir. 1985). Although this review is narrow, "a reviewing court must conduct a searching and careful inquiry into the facts." *Nw. Motorcycle Ass'n*, 18 F.3d at 1471.

## IV.   DISCUSSION

The Court addresses all three cross motions together because the parties' arguments in the three motions entirely overlap.

### A. NEPA

NEPA does not provide a private right of action. *See Gros Ventre Tribe v. United States*, 469 F.3d 801, 814 (9th Cir. 2006). Thus, "[t]he judicial review provision of the APA is the vehicle" for challenging an agency's decision under NEPA. *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 942 (9th Cir. 2006); *Gros Ventre Tribe*,

469 F.3d at 814; s*ee Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 882-83 (stating that judicial review of agency action proceeds under the APA where the statute at issue, NEPA, does not provide cause of action).

NEPA is a procedural statute that requires federal agencies to "assess the environmental consequences of their actions before those actions are undertaken." *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 993 (9th Cir. 2004). NEPA provides for public participation in assessing a proposed action's environmental consequences, enabling the public to "play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Although NEPA lacks a substantive mandate, its "action-forcing" procedural requirements help carry out a "national commitment to protecting and promoting environmental quality." *Id.* at 348. As part of these action-forcing requirements, NEPA mandates that agencies considering "major Federal actions significantly affecting the quality of the human environment" must, to the fullest extent possible, prepare an EIS (environmental impact statement). *See* 42 U.S.C. § 4332(C); *see also* 40 C.F.R. § 1508.11.

The EIS "shall provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. "[T]he EIS process should serve both to alert the public of what the agency intends to do and to give the public enough information to be able to participate intelligently in the EIS process." *State of California v. Block*, 690 F.2d 753, 772 (9th Cir. 1982).

After an agency has prepared a draft or final EIS, the agency must issue a SEIS if the "agency makes substantial changes in the proposed action that are relevant to environmental concerns." 40 C.F.R. § 1502.9(c)(1)(i). But "supplementation is not required when two requirements are satisfied: (1) the new alternative is a 'minor variation of one of the alternatives discussed in the draft EIS,' and (2) the new alternative is 'qualitatively

within the spectrum of alternatives that were discussed in the draft [EIS].'" *Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1045 (9th Cir. 2011) (citation and emphasis omitted). Indeed, a SEIS is required "only if changes, new information, or circumstances may result in significant environmental impacts 'in a manner not previously evaluated and considered.'" *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1157 (9th Cir. 2008).

### B. Analysis

The parties' arguments in their cross motions place the Court's review within this *Russell Country* framework.[6] Plaintiffs basically argue the change in the OHV Standard between the FEIS and the Final ROD was too significant, and outside the spectrum of alternatives discussed in the FEIS. (ECF No. 44 at 5, 11, 17-21.) Plaintiffs therefore argue Federal Defendants violated NEPA by not preparing a SEIS before issuing the Final ROD. Federal Defendants and Intervenor-Defendants counter that the changes in the OHV Standard from the FEIS to the Final ROD fell within the spectrum of alternatives discussed in prior draft documents, and were not so substantial as to require supplementation of the EIS. (ECF Nos. 37 at 21-24, 40 at 25-30, 45 at 9-16, 46.) The Court agrees with Federal Defendants and Intervenor Defendants.

///

---

[6]Plaintiffs make three other arguments in their motion that the Court does not address in detail here. First, Plaintiffs affirmatively argue they have standing to prosecute this case. (ECF No. 31 at 17-18.) However, neither Federal Defendants nor Intervenor Defendants dispute Plaintiffs' standing. Moreover, the Court finds Plaintiffs have standing because there is no dispute Federal Defendants' actions caused the Sierra Trail Dogs to move the Mystery 250 to July, which harms the Sierra Trail Dogs because they would rather have the event in June, and harms the other Plaintiffs because they have members who either have, or are planning to, participate in the Mystery 250, and would prefer it was in June. Second, Plaintiffs argue Federal Defendants violated NEPA's 'range of alternatives' requirement. (*Id.* at 18-23.) However, the Court agrees with Intervenor-Defendants that Plaintiffs' 'range of alternatives' argument is merely a different gloss on their core supplementation argument. (ECF No. 46 at 7-10.) Thus, the Court will not address it separately. Third, Plaintiffs initially argued that the objection resolution process Federal Defendants undertook here unlawfully circumvented NEPA (ECF No. 31 at 27-28), but later agreed with Federal Defendants that argument is also subsumed by the Court's supplementation inquiry under *Russel Country* (ECF No. 44 at 23 ("Plaintiffs are willing to accept that recognition and focus on the adequacy of disclosure and analysis under NEPA.")).

To start, the Court finds the OHV Standard adopted in the Final ROD fell within the spectrum of alternatives discussed in the FEIS. *See Russell Country*, 668 F.3d at 1045 (stating this is one of two requirements for supplementation not to be required). Versions of the Forest Plan from the RDEIS through the FEIS contained three alternatives, where the no action alternative would have allowed the permitting process for events such as the Mystery 250 to proceed as it had before, and the conservation alternative would have outright prohibited events like the Mystery 250 at all times of year. (ECF No. 31 at 10-12.) The OHV Standard adopted in the Final ROD falls between these two alternatives because it places some limitations in terms of when and where events like the Mystery 250 can be held, but allows them to occur. The Court further agrees with Defendants that the OHV Standard adopted in the Final ROD is best characterized as a modified version of alternative B with some more restrictive elements taken from alternative C, the conservation alternative. (ECF Nos. 37 at 22-23, 40 at 27.) This is a permissible approach that does not require supplementation. *See Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 854 (9th Cir. 2013) (finding supplementation was not required where "the Selected Alternative is primarily made of elements from Alternatives 1, 3, and 4 that were analyzed—as elements—in the final EIS."). Indeed, the Court agrees with Intervenor Defendants that "the final OHV Standard differed in degree, but not in kind, from the alternatives the Forest Service had considered throughout the process." (ECF No. 40 at 27.)

And while the Court finds Plaintiffs' 'bookends' argument—that an agency cannot comply with NEPA by presenting an 'allow everything' alternative, and an 'allow nothing' alternative, and then calling whatever option it ultimately selects a midpoint option between the two—persuasive to a point, it is ultimately unpersuasive here. (ECF Nos. 31 at 21-22, 44 at 13-14, 19.) First, as Intervenor-Defendants point out, Plaintiffs improperly pulled the 'bookends' language out of a response to a question about grazing unrelated to the OHV Standard. (*Compare* ECF No. 31 at 21 (citing AR 34465) *with* ECF No. 46 at 13 (explaining that AR 34465 and AR 36367 are responses to comments about grazing,

1    not the OHV Standard).) Second, and more importantly, Plaintiffs' argument largely

2    ignores that Federal Defendants prepared an alternative B, which contained "(a) buffer

3    size; (b) seasonal restrictions; [and] (c) time of day restrictions[,]" like those ultimately

4    included in the Final ROD. (ECF No. 31 at 20.) Of course, the buffer size, seasonal, and

5    time of day restrictions Federal Defendants ultimately adopted in the Final ROD are more

6    restrictive in terms of allowing fewer OHV events than the restrictions would have when

7    Federal Defendants first considered alternative B in the RDEIS (or in subsequent drafts).

8    But the fact that Federal Defendants considered a similar midpoint option to the option

9    ultimately selected drains the persuasive force from Plaintiffs' bookends argument. *See,*

10   *e.g.*, *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 871 (9th Cir. 2004)

11   ("The EIS was not required to consider more mid-range alternatives to comply with

12   NEPA."). And as pertinent here, the more restrictive buffer size, seasonal, and time of day

13   restrictions Federal Defendants ultimately adopted would have substantially similar

14   consequences to those they did consider in evaluating alternative C—protecting sage-

15   grouse habitat at the expense of events like the Mystery 250. *See* AR 36165 (noting that

16   "permit holders who still wanted to hold events or guide clients would need to identify

17   different locations and routes. Permit holders and applicants could incur additional costs

18   and longer timelines in order to obtain permission for their activity. Some past OHV event

19   participants might be deterred by changes in event locations and timing."); *see also*

20   *Westlands*, 376 F.3d at 871-72 (explaining an agency need not consider other alternatives

21   that would have "substantially similar consequences" to those the agency did consider).

22         Further, the Court finds the OHV Standard adopted in the Final ROD was a minor

23   variation of the OHV Standard included in the FEIS such that Federal Defendants were

24   not required to prepare a SEIS. *See Russell Country*, 668 F.3d at 1045 (stating this the

25   other of two requirements for supplementation not to be required). Intervenor-Defendants'

26   argument on this prong is intertwined with their argument that Federal Defendants'

27   adoption of a more restrictive OHV Standard in the Final ROD does not trigger NEPA at

28   all because Federal Defendants made a choice that is more protective of the environment

1    than the OHV Standard included in the FEIS. (ECF Nos. 37 at 22-23, 40 at 25-26.) As

2    pertinent to both arguments, Federal Defendants found that the more restrictive OHV

3    Standard adopted in the Final ROD would better protect the sage-grouse and thus better

4    serve the purposes of the Forest Plan amendment process. *See* AR 036042, 036044.

5    Because the Court "may not substitute its judgment for that of the agency[,]" *Envtl. Def.*

6    *Ctr.*, 344 F.3d at 858 n.36, the Court thus finds that OHV Standard adopted in the Final

7    ROD lessened the environmental impact of the plan. "That a modified alternative only

8    lessens environmental impacts may tend to show that the new alternative is a 'minor

9    variation of one of the alternatives discussed in the draft EIS[.]'" *Russell Country*, 668 F.3d

10   at 1048 (finding that, though modifications that lessen environmental impacts may

11   sometimes require supplementation, no supplementation was required under the facts of

12   that case). Accordingly, the fact that the more restrictive OHV Standard Federal

13   Defendants adopted in the Final ROD lessened environmental impacts weighs in favor of

14   finding it was a minor variation that did not require supplementation.

15         Other factors lend support to the finding that the OHV Standard adopted in the Final

16   ROD was a minor variation of the OHV Standard included in the FEIS. To start, of the

17   caselaw Plaintiffs rely on in the pertinent portion of their motion, only *Block*—where the

18   Ninth Circuit required supplementation—supports their position. (ECF No. 31 at 23-26

19   (relying on *Block*, 690 F.2d at 771, *Russel Country*, 668 F.3d at 1045, and *Trustees for*

20   *Alaska v. Hodel*, 806 F.2d 1378, 1383 (9th Cir. 1986)).) *But see Block*, 690 F.2d at 769

21   (finding that supplementation was required), *Russel Country*, 668 F.3d at 1045-49 (finding

22   that supplementation was not required), and *Trustees for Alaska v. Hodel*, 806 F.2d at

23   1383 (finding that the agency violated NEPA by not soliciting public comment, but not

24   addressing supplementation as pertinent here).) And to the contrary, the Court agrees with

25   Intervenor-Defendants that *Russel Country*'s discussion of modification of the dispersed

26   camping rule at issue in that case is both more analogous than *Block*, and supports

27   Defendants' position here. (ECF No. 40 at 26.) In *Russel Country*, the Ninth Circuit found

28   the agency was not required to supplement in part because the change it made to the

dispersed camping rule decreased the adverse environmental impact of the rule as previously proposed by the agency. *See* 668 F.3d at 1049. That makes *Russel Country* particularly analogous here—more so than *Block*, where the plaintiffs were challenging the Forest Service's decision to designate some wilderness areas nonwilderness. *See Block*, 690 F.2d at 760.

Moreover, the Court agrees with Federal Defendants that *Granat v. U.S. Department of Agriculture*, 238 F. Supp. 3d 1242 (E.D. Cal. 2017) is more analogous to this case, and provides persuasive authority supporting Defendants' position that no supplementation was required. (ECF No. 45 at 14-15.) The *Granat* court found that eight changes similar to the changes Federal Defendants made to the OHV Standard here did not require supplementation because they were minor changes that fell within the spectrum of alternatives the agency had already considered. *See* 238 F. Supp. 3d at 1256. Similarly, the Court agrees with Defendants that its prior decision in *Western Exploration, LLC v. U.S. Dep't of Interior*, 250 F. Supp. 3d 718 (D. Nev. 2017) supports Defendants' position—not Plaintiffs'—because in *Western Exploration*, unlike here, a major component the agency added to its final plan was outside the spectrum of alternatives it had previously considered. (ECF Nos. 31 at 22, 44 at 17, 45 at 13-14, 46 at 18-19 (discussing *Western Exploration*).) As Intervenor-Defendants argue, alternative C always considered an outright ban on OHV events, "whereas much of the 2.8 million acres at issue [in *Western Exploration*] had not been slated for any protective designation in any alternative in the prior EIS." (ECF No. 46 at 19 (emphasis omitted).)

For these reasons, the Court finds that the OHV Standard adopted in the Final ROD was a minor variation of the OHV Standard included in the FEIS such that Federal Defendants were not required to prepare an SEIS, and did not violate NEPA. *See Russell Country*, 668 F.3d at 1048-49 (finding no supplementation required when the "'final decision' was a 'minor variation' and 'qualitatively within the spectrum of alternatives'").

Alternatively, the Court is persuaded by Federal Defendants' argument that NEPA did not require Federal Defendants to prepare a SEIS because the changes to the OHV

1    Standard are not 'relevant to environmental concerns.' (ECF Nos. 37 at 22, 45 at 11

2    (relying on *Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1467 (9th Cir. 1996)).)

3    Plaintiffs make no attempt to distinguish *Babbitt*, but the Court finds it analogous here.

4    (ECF No. 44.) In *Babbit*, the Ninth Circuit found that the National Park Service was not

5    required to prepare a supplemental EIS when it amended one of its regulations to prohibit

6    mountain bikers from riding their bikes on a number of trails (mostly in the Marin

7    headlands) they had previously been allowed to ride. *See* 82 F.3d at 1456-57. Like Federal

8    Defendants here, the National Park Service "realized that it was imposing 'certain

9    limitations' on bicycle use but supported that decision by reference to the principles of

10   'public safety, resource protection, and the avoidance of visitor conflicts.'" *Id.* at 1455; *see*

11   *also* AR 36165 (recognizing that adopting the conservation alternative C would serve the

12   goal of reducing adverse environmental impacts to the sage grouse's habitat, but would

13   restrict OHV users' ability to hold events). In short, in *Babbit*, like here, the agency made

14   a choice that was more protective of the environment, not less, and thus was not required

15   to prepare a SEIS. *See* 82 F.3d at 1456-57, 1467.

16          Indeed, the Ninth Circuit rejected arguments made by the mountain-biking-

17   coalition-group-plaintiffs in *Babbit* similar to the arguments Plaintiffs make here. For

18   example, Plaintiffs here argue that forcing them to hold the Mystery 250 in July will

19   increase the risk of wildfire. (ECF No. 44 at 21.) Plaintiffs in *Babbit* argued that "the closing

20   of trails might force bicyclists to ride in other areas, thereby compromising the nature of

21   those areas." 82 F.3d at 1457. The Ninth Circuit rejected this argument as speculative.

22   *See id.* But more generally, both arguments attempt to force the agency to consider

23   adverse environmental impacts caused by the plaintiffs' user groups that may occur

24   regardless of the new rules adopted by the agency. *Babbit* and this case also share a

25   common thread in that the bikes in *Babbit*—and the OHVs here—harm the environment

26   (again, as determined by Federal Defendants here as to the sage-grouse). Thus, *Babbit*

27   suggests Federal Defendants should not have to prepare a SEIS when, as here, they

28   make a decision that protects the environment but negatively impacts the interests of user

groups whose users harm the environment. The Court therefore alternatively holds Federal Defendants were not required to prepare another SEIS after making the OHV Standard more restrictive because the changes Federal Defendants made to the OHV Standard were not "relevant to environmental concerns" as that phrase is used in 40 C.F.R. § 1502.9(c)(1)(i). To hold otherwise would disregard NEPA's purpose of "protecting and promoting environmental quality." *Robertson*, 490 U.S. at 348; *but see Russell Country*, 668 F.3d at 1048 (stating modifications that lessen environmental impacts may sometimes require supplementation).

Plaintiffs' remaining arguments are unpersuasive. The Court will address two of them here. Plaintiffs specifically argue that "[g]auging NEPA compliance against an FEIS invites reversible error." (ECF No. 44 at 9.) But the Court agrees with Federal Defendants that "where the final approved action differs from the proposed action in the final EIS, courts consider the final EIS rather than the draft EIS as the relevant point of comparison." (ECF No. 45 at 10.) *See also Kimbell*, 709 F.3d at 853-55 (comparing a final EIS to the ROD and finding no supplementation was required under NEPA). This view also aligns with a regulation upon which all parties rely—40 C.F.R. § 1502.9(c)(1)—which refers to "either draft or final environmental impact statements[.]" *Id.* Finally, the Court also rejects the other aspect of Plaintiffs' argument that Federal Defendants had to prepare a SEIS because forcing the Mystery 250 to be held in July increases the risk of wildfire, which is that wildfires are relevant to environmental concerns. (ECF No. 44 at 21-22.) But as Federal Defendants point out, that concern is best addressed in response to an application from the Sierra Trail Dogs for a special-use permit to hold the Mystery 250 in July. (ECF No. 45 at 15 (relying on *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 800 (9th Cir. 2003), *opinion clarified*, 366 F.3d 731 (9th Cir. 2004).) *See also Norton*, 348 F.3d at 800 (explaining that an "agency's planning and management decisions may occur at two distinct administrative levels").

///

///

In sum, Federal Defendants did not violate NEPA as pertinent to Plaintiffs' challenge in this case. The Court will thus deny Plaintiffs' motion, grant Defendants' cross motions, and direct entry of judgment in Defendants' favor.

**V.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is further ordered that Plaintiffs' motion for partial summary judgment (ECF No. 31) is denied.

It is further ordered that Defendants William "Bill" Dunkelberger, Humboldt Toiyabe National Forest, and United States Forest Service's cross motion for summary judgment (ECF No. 37) is granted.

It is further ordered that Intervenor-Defendants American Bird Conservancy, Center for Biological Diversity, Western Watersheds Project, and WildEarth Guardians' cross motion for summary judgment (ECF No. 40) is granted.

The Clerk of Court is accordingly directed to enter judgment in Federal Defendants' and Intervenor-Defendants' favor, and close this case.

DATED THIS 6th day of July 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE